POTTER (RIDDLE v.).   See Case No. 11,811.

———

## Case No. 11,337.

### POTTER v. SCHENCK.

[1 Biss. 515; 3 Fish. Pat. Cas. 82.] [1]

Circuit Court, N. D. Illinois.   May Term, 1866.

PATENTS — VARIETY OF FORM NOT A CHANGE OF PRINCIPLE—INJUNCTION—WHEN GRANTED.

1. When a mechanic has the leading idea which is developed in Wilson's patent, once thoroughly understood and fixed in his mind, he can carry out that idea in a variety of forms, simply by the exercise of mechanical ingenuity, which nevertheless are not substantial variations from the invention patented.

[Quoted in Adams v. Joliet Manuf'g Co., Case No. 56. Cited in Norton v. Jensen, 1 C. C. A. 452, 49 Fed. 866.]

2. Merely reversing the feeding bar of Wilson does not change the principle of his invention.

[Quoted in Adams v. Joliet Manuf'g Co., Case No. 56.]

3. An injunction being the strong arm of equity, ought never to be granted without the most complete conviction, on the part of the court, of its absolute necessity.

4. If it be true that the patentee is entitled to his claims of invention as his property, there is an end to all hardship, because no man ought either in law or in morals to use the patentee's property without compensation and without his consent.

In equity. This was a motion for a provisional injunction to restrain defendants from infringing letters patent for "improvement in sewing machines," granted to Allen B. Wilson, November 12, 1850 [No. 7,776], reissued January 22, 1856 [No. 346], and extended for seven years, November 12, 1864. The defendants were selling single-thread sewing machines in which the cloth was advanced by a sliding presser foot, provided on the lower side with serrations pressing the cloth against the table or platform on which it rested.

The facts appear in the opinion of the court.

S. S. Fisher, for complainants.

J. Edwards Fay and Bonney & Griggs, for defendants.

DRUMMOND, District Judge. The alleged infringement consists in the violation, on the

———

[1] [Reported by Josiah H. Bissell, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

part of the defendants, of the patent of Allen B. Wilson, obtained in January, 1856, called re-issue No. 346, and is for the feeding apparatus of the sewing machine and its appurtenances. It contains four claims.

One is for the method in which the cloth is moved by what Wilson calls the joint action of two surfaces between which it is clamped, and which act in a particular way so as to cause the cloth to proceed forward in the operation of sewing.

Another is the arrangement by which, in the operation of sewing, the cloth is held by the needle so as to prevent the cloth from moving backward during the return of the feeding apparatus.

A third is a mode by which the cloth is retained in its position and the needle permitted to escape, called stripping.

The fourth is the manner in which the upper surface is arranged or mounted, so as to enable the operator to lift it from the cloth in order to remove the latter.

This is a very general statement of the claims, and, of course, would not be understood except by those who had examined the specifications, or were familiar with the operation of the machine.

There is no controversy as to the validity of the patent on the claims set forth; the only question is as to the infringement.

It is alleged that the defendants have not infringed the claims set forth in the schedule of Wilson.

The examination, perhaps, would have been more satisfactory if there had been a model of the machine here precisely of the form of the part in question, in which it was originally devised and used by Wilson. The machines that are now operated by the plaintiffs, it is conceded, differ in form from that which is described in the claims of Wilson in 1856. Still, the apparatus, as now used, enables us to understand how it was employed in the machine when constructed in conformity with the specifications of Wilson.

The machines, now, have what is called the four-motion feed. According to the specifications and the proof, the arrangement of Wilson was to have something in the form of a shoe beneath the plate, upon which the cloth was placed, the upper surface of which was roughened by saw-teeth cut upon it. This shoe acted through an opening in the plate, and a motion was given to it backward and forward, so that when there was a pressure from above upon the cloth which was lying upon the plate, sufficient to force it upon the shoe, the teeth caught the cloth and carried it forward. This was the first claim. Then, when the shoe ceased to act, the needle pierced the cloth so as to prevent it from coming back; and that was the second claim. There was also an arrangement by which the cloth was held by the spring which created the pressure from above, so as to prevent it from rising and moving as the needle was withdrawn, and thus accomplished the process of stripping, as it was termed, in the third claim.

Then there was another arrangement by which this spring that presses upon the cloth was raised, so as to enable the operator to remove the cloth from the machine.

That substantially was the manner in which the feeding apparatus, as described by Wilson in the specifications, operated, and the question now is whether the apparatus used by the defendants interferes with or incorporates in itself the invention of Wilson in whole or in part. So far as I have been able to examine the question, I think that it does.

The machine of the defendants is a single thread sewing machine, one of the cheap kind. The main difference in the construction of the defendants' machine and that of Wilson, as to the feeding apparatus is this: in the machine of the defendants, the principal part of the feeding apparatus is placed over the plate upon which the cloth rests, instead of underneath. It is in fact in the form of a shoe more distinctly than that used by Wilson. This shoe is provided with saw teeth on the under side, and is made to press upon the cloth from above, substantially in the same way as the one used underneath the plate by Wilson, presses upon the cloth from below. The purchase as obtained by this pressure, and the teeth operating from the top instead of from the bottom, move the cloth forward. Then the needle goes in in the same way substantially and holds the cloth when the shoe is drawn back. The shoe also holds the cloth down or strips it from the needle when the latter is drawn up, and it is so connected with the upper part of the machine as to enable the operator to lift it and remove the cloth.

The question is, whether this is a substantial variation in all or any of its particulars, from the invention of Wilson as described in his specifications of 1856. I have already stated that it is not, and, as it seems to me, on this ground, viz: that when a mechanic has the leading idea which is developed in Wilson's patent, once thoroughly understood and fixed in his mind, he can carry out that idea in a variety of forms, simply by the exercise of mechanical ingenuity. Here was a great leading principle in the feed of the machine, devised and invented by Wilson. He, to be sure, describes the particular manner in which he carries out that idea; but once get that in the mind and it is clear that you can carry it out in a variety of forms. This is, it may be said, an ingenious variation or difference by which the idea of Wilson is carried out.

The shoe or main part of the feeding apparatus, is not placed beneath the plate upon which the cloth rests, but is on the top of the plate, or, as was contended and I think with a good deal of force, by the counsel for complainants, instead of being placed as Wilson describes it, it was merely reversed. It

is clear that that does not change the principle of the invention, and it is clear, too, as already stated, that a mechanic once having the idea in his mind could apply it by adopting a great variety of forms and devices, and this among others.

This device of Wilson's has been the subject of a great deal of litigation as is set forth in the bill. The claim has been contested with all the skill, ingenuity, and ability which could be brought to bear in this country upon a question which involves not only so much of personal and individual, but also so much of public interest, as a machine like this, which, it may be said, comes home to every family.

The invention of Wilson has stood the test of all this protracted and severe litigation; and it is shown by the proof that machines similar in their character to the machines used by the defendants have already come under judicial examination, and have been held to be infringements of Wilson's patent.

Now I understand and fully appreciate what was pressed with so much zeal and pertinacity by the counsel for defendants, that patentees frequently, by the monopolies of their inventions, accumulate wealth, form combinations, and may wear out men of inferior means in litigation. I understand, too, that it is not uncommon for parties interested in inventions to make arrangements with persons who use similar machines or improvements to those claimed by themselves, by which pretended litigation is carried on with a view of accomplishing a particular result. But I think that can hardly be true of the litigation in relation to this part of the sewing machine. And if it has been fair, carried on in good faith, and without collusion, then certainly the result is entitled to great consideration from this court, when the question is brought up here for the first time. So that independently of the view which I am inclined to take from an actual examination of these machines, I am confirmed in the conclusion to which I have come, by the result of this protracted litigation.

The affidavits filed on the part of the defendants, are all substantially the same. The witnesses undertake to specify various particulars in which they claim that the feeding apparatus used in the defendants' machines, materially differs from the invention mentioned in the specifications of Wilson.

It is unnecessary for me to go into a detailed examination of the particulars which are referred to by the various witnesses; such as, that one is the result of the joint action of two or more surfaces and the other is not; that one has not so many parts as the other; that there is a difference in movement, etc.

From what has already been said, the view of the court as to the substantial identity of the feeding apparatus of the machines will be apparent, the principle of the two machines, as it seems to me, being substantially the same, with a variation in form, merely, in one.

A very considerable portion of the argument for the defendants which was pressed upon the court with so much zeal and force, was the serious consequences upon the business of the defendants that would follow the issuing of an injunction. That, of course, every court of equity always appreciates. An injunction is the strong arm of equity. It often lays its hand upon a man's business and stops it entirely. It ought never to be granted without full conviction on the part of the court of its urgent necessity.

In this case, it was said by the complainants' counsel, and is apparent from the evidence and from the whole history of the case, that there are parties who sell single-thread machines similar in character and in price to the machines sold by the defendants, who have acknowledged the validity of the Wilson patent, and pay it a tribute by obtaining a license. Now if it be true that Wilson is entitled to these claims of invention as his property, as I think he is, there is an end, as a matter of course, to the alleged hardship. Because, if the defendants are using the complainants' property, they ought not to use it, either in law or in morals, without compensation and without their consent.

So, too, if the proprietors of other single-thread machines pay a license fee to Wilson or to his assignees, for this feeding apparatus, it would not be attended with ruinous consequences to these defendants, more than to other parties, to pay a license fee; so I do not think that the consideration urged is entitled to the weight it would be, if, in point of fact, the injunction were to stop absolutely and in any contingency, the sale of these machines. If it does, it is because the machine is so inferior to the single-thread machines of others in the market that it cannot successfully compete with them when paying a license fee.

Injunction granted.

[For other cases involving this patent, see note to Potter v. Whitney, Case No. 11,341.]